Ok, next case is People v. William Sprind 09-327. Counsel, Mr. Drew, you're up first. Good morning. May it please the court, counsel. My name is Brian Drew and I'm here on behalf of the defendant William E. Sprind Jr. in the case that arose out of Franklin County being 07-CF32 wherein Mr. Sprind, after a stipulation for much of the evidence, a bench trial was held and he was found guilty and sentenced to 14 years in the Illinois Department of Corrections. In effect, at the time he had a different defense counsel. We are here before this court arguing a couple different issues, the first being of which is ineffective assistance of counsel of the defendant's trial counsel. First, we cited a stricter case as to the two-pronged standard and having listened to the argument before, I won't belabor going through that with this court as it's obviously well aware of the two-pronged standard. I would simply move into our actual argument as it relates to where counsel failed in his actions upon the defendant's behalf. First and foremost of which is there was a motion filed by defense counsel, I believe it was September 30, 2008, claiming that there needed to be a fitness hearing had upon the defendant because of some deficiencies at the time of his abilities to proceed forward through with trial. Some of the evidence, and there's arguments in there, but as far as the record itself, it's not terribly replete with a lot of evidence as to what precisely that was other than some banter I believe with counsel at sometimes concerning a stroke that the defendant had had. At a later point in time, counsel withdrew that motion and proceeded forward with stipulating to the vast majority of the state's evidence and the bench trial taking place in front of the Honorable Al Vantries. But I know in the closing arguments of defense counsel, he states that my client, the defendant, has no recollection of the day in question, has no recollection of the events of what took place there. And in looking at fitness, it is not only just one that an individual has to understand what's being charged with and understand the difference at the time of the commission of the defense, but in addition to that, the fitness at the time to participate with counsel and to participate adequately in his defense and to present, have aid in the presentation of evidence. And in this case, counsel stated in his closing argument that my client doesn't remember any of this, doesn't know what happened. And I think at that point in time to state that to this Court, having previously filed, and had believed at least in counsel's own mind when he filed the motion, presuming that no one would file a motion that they did not believe was proper and just to be placed before this Court, counsel for defendant had a question as to his fitness in September of 08, then turns around and the defendant is hospitalized in October of 08, then proceeds to come before the Court and tell them that the defendant has no recollection of anything and yet never seeks to have this fitness tested. At no time was it ever requested, and the motion was never brought before the Court. We would assert that the failure to do that when defense counsel himself admits as to the deficiencies of the defendant that I believe there should have been, and in fact, a fitness hearing held and testing done on the defendant to determine whether or not, in fact, he was sound and fit to stand trial for the charges that were in effect against him. The second part being that the counsel for the defendant failed to effectively present an adversarial testing in defense of the prosecution's evidence. And I understand, and I've read counsel's brief concerning the opinion as to defense counsel's understanding and knowledge of what the purpose is for a stipulated bench trial, and giving it its due consideration, I would assert that I understand fully what the purpose is for a stipulated bench trial is to preserve legal issues, to present to this Court at a later point in time, knowing full and effective to have the trial be an effort, as the movie had stated, in futility. There's no reason to have a trial because the evidence is so overwhelming, there's nothing you can present as a defense. But the cases that I have seen that done in are typical cases if you have, in essence, a gun case where there is a suppression question, the search and seizure of a particular piece of evidence. If it comes in, you're a convicted felon, and you're charged with possessing a firearm as a convicted felon. Well, if the evidence comes in, you're guilty. You have no defense to it, it's in your home, you're the only one that lives there, you had a weapon in your car, you're there, you're guilty. So whether or not that evidence comes in is the crux to the entirety of the case. So you do a stipulated bench trial merely to say, I want to preserve this issue, you were wrong, trial court, I'm going to go to the appellate court now and state that this suppression of this evidence should have been granted. That's a good reason to use that sort of thing. I've seen it in drug cases where possession of cocaine is the charge, merely the admission of the cocaine on your person, conviction of the crime that you're there. So you do a stipulated bench trial because that is the only evidence necessary to convict you. And if it comes in, you are convicted. But in this case, to stipulate to the blood testing that was done upon the defendant and to not test that in any adversarial manner, in any way, shape, or form, I think is ineffective assistance of counsel. Because in this case, just merely the admission of these blood results showing that he had some prescription medication in his system as well as an illegal drug, I don't think completely ends the inquiry as to whether or not the person, in this case the defendant, is guilty of the crime for which he is charged. Would you think that you would prefer a stipulated bench trial over a plea of guilty based on the consequences in civil litigation following this was an automobile accident? Sometimes you see where people are reluctant to plead because of how it would affect the case down the road. It would be. I mean, sometimes people, I've actually used it before,  so that way you have some ability to make a statement or testify in a civil proceeding. But in this case, I know of no civil proceeding that was pending against him at the time which would have precluded that. And in fact, the action being in 07, I would have to think that any lawsuit would have been, would have preceded or settlement from an insurance company. And I did not see any tickets written to the defendant for him failing to have insurance, so I can only presume from that, and it's merely a presumption, that in fact that was taken care of. But in this case, to not do that, there is, and in the people's brief, they cite to the, what evidence was presented in on behalf of the testing of this, that he was under the influence at the time of this accident based on their testing. Well, now, that's ultimately an inquiry for the trial court to make, or the trial fact to determine whether or not somebody's under the influence. There can be presumptions based on what's in your system and based in conjunction with your actions. But for an actual expert to testify, this person was under the influence at the time of his, at the time he struck his vehicle, is improper. And not to test that in any manner or not cross-examine that individual and say, well, now, hold on, you made a statement that the amount of cocaine is enough that it's killed people before. Well, what does that mean? I mean, possibly a very negligible amount of cocaine could cause one individual to die if you have a particular heart condition, and it may not have any effect on another person. Was there a full-blown sentencing hearing in this case? Yes, I believe there was. So there wasn't any recommendation or any agreement that the parties reached, along with the discussion about a stipulated bench trial, that had a certain sentence also imposed? Correct. And there was no caps placed on that. There was no guidelines, no ranges, no deference being given, no, to my knowledge, no evidence not presented at the sentencing hearing on behalf of the state to aid the defense in his sentencing and the fact that he was sentenced to the maximum allowable under the crime and offense that he was convicted of. And in essence, to do that, there was no questioning into how and the manner in which the blood was drawn and if it, in fact, was credible and legitimate and done under the proper circumstances, not only if it complied with the law, which I will get to in the second half of my argument, but in addition to that, even if under the circumstances, the medical circumstances, because everyone agrees that the defendant was in such a bad state of affairs from the accident that he was incapable of being taken to jail. He was taken to the hospital first. Now, the evidence that's before this Court is very slight as it relates to what all else happened to him in the hospital based on what fluids were given to him, how much, whether or not narcotics were given to him before the blood draw was done. There is no evidence to that, and I'll assert to that. I might assert in this Court that that, in fact, did happen. But what I would say is that's your job as a defense attorney to inquire about those issues when you have someone coming in to testify that someone is under the influence, that these amount of drugs are in the system and they were there at the time of the accident. To not inquire at all is ineffective in this case. To merely just accept guilt and to move on. I mean, in my mind, in looking at it, I can't see how you've done anything different. You did preserve the issue, which I will get to in a moment, about the motion to suppress and eliminate as it relates to the procedural substantive methods and the ex post facto violation of the United States Constitution as it relates to the admission of the actual blood test themselves. He did preserve that. I mean, that was done. It was effectively preserved, I believe, and I'm here before you to argue that in a moment. But in this case, it takes just merely the admission of these blood tests doesn't end the inquiry as to what this defendant was accused of. There's certainly more into it because it takes more than that to convict him of the crime that he was accused of. So we would assert to this court that the failure to in any way, shape, or form question the prosecution's witness in any way, shape, or form as it related to the blood draw, the validity of it, other factors that go into that, what the levels were, how the levels came to pass, when the ingestion of the drug may or may not have taken place, the amount of the prescription, it's the fact the person could build up that amount in their system based on being prescribed this medication over a long period of time. None of that was questioned in any way, shape, or form, merely stipulated to. So in effect, the defendant, he didn't get told, well, you're pleading guilty to this. It wasn't admonished by his defense counsel, well, you're pleading guilty. It wouldn't have been admonished by the courts you're pleading guilty. But in effect, that's in essence what they've done. They stipulated to all of the evidence, presented two witnesses merely to say, well, he appeared fine to me before it went. But the crux of the case rises and falls with this evidence as it relates to the blood draw. He's charged with driving under the influence of drugs and alcohol and or drugs by themselves or a combination thereof, and in this case, merely drugs. And there's no inquiry at all as to the expert as to how that came to pass or how they got their calculations. When did you get in the case sometime after sentencing? Was it within 30 days? I believe originally my father was the one who came into the case. I don't know exactly. I do not believe. I believe Mr. Patchett had filed the notice of appeal if my memory serves me correct. And from that, it's proceeded from that point in time. I believe we were stuck with the record. There was no opportunity for, I guess, a post-sentencing motion where some of this could have been attacked or brought out. There's no evidence to support what would have happened if these witnesses had been cross-examined the way you're describing, what the answers would have been. Correct. Okay. And I believe, and I'd have to double-check the record, but I do not believe my office got in prior to that. I think there had already been motions filed as that affected rulings by the court. In fact, I know Judge Bantrey denied a motion to reconsider filed by Mr. Patchett in the underlying case. For the sentence. For the sentence as well, and the court had denied it. So we came in after that point in time, so I don't believe at that point. Did he file a motion for new trial or anything? I believe the post-trial motion. I believe the post-trial motion. Other than attacking the sentence? Well, I think he did attack the court's ruling as it related to the admission of some of the evidence, if my memory serves me correct, and he did object to that. And now I'll move into the second portion of the argument on behalf of the defendant, being that the court erred in denying the motion to suppress and the motion in limiting as it relates to the amendments to the Illinois Administrative Code, as it relates to the admission of blood testing and the changes in the procedure and the substantive nature of what it took to have this evidence admitted. I will submit to the court that I have read the Pateki decision. I have seen it, argued it, and fought it in more than one jurisdiction. I won't belabor that issue with the court as I'm fully aware in reading decisions of this court. The court is fully aware of that. That decision and what it stands for concerning substantive versus merely a procedural nature. But I would ask this court to separate itself from that and to move in a different direction because in this case, when you look at these rules to admit blood alcohol testing are promulgated, not merely just as an afterthought or a procedural thing to say, well, you just have to do this so the evidence can be admitted. It's there to have some authenticity to the results so that you can rely upon the results, so that substantively this evidence we are presenting before a jury and or a judge based on these findings have some validity to it. Because without that, with no standards, with no recommendations or testing procedures whatsoever, you just throw evidence out there and unbeknownst to whether or not this scientific evidence and all the weight and credibility that it carries with it, whether or not it's reliable. And in this instance, the courts are also very, very clear that strict compliance with the administrative code as it relates to the admission of blood testing must be done, not substantial compliance, strict compliance. You must strictly comply with the rules. I must concede, as it's clear from the record, that in this case the manner in which this evidence is to be admitted as far as the use of an alcohol-containing swab changed. That administrative code was changed. It was changed prior to trial. At the time of the trial, the new rule was in effect. There's no, I can't disagree with that. That is a fact. In essence, the crux of my argument is, as I say it substantively, I don't believe that it's merely procedural to say that using a swab that has alcohol in it when part of what you're testing for is the presence of drugs and alcohol and other items, merely to say, well, and it's not clear in this case because there wasn't an actual hearing ever had about what effect an alcohol in a swab would actually have if it affects the results. I've had those hearings in other cases, but it wasn't done here. Yeah, but we're not looking for alcohol in that. In those cases, it would have been an alcohol-related case. This is a non-alcohol-related case because it's a narcotic. Correct. And we're looking at a narcotic. But in effect, it has no, and in that case it was. Because in many cases, you're dealing with the observance of alcohol in the system and whether or not the isopropyl alcohol or the ethyl alcohol in the swab itself would have an effect. Probably isopropyl, I would think. Right. Well, actually, in some of them, there's actually a bit of ethyl alcohol in the swab. But I've had that hearing as well. The state police lab says it's negligible. But be that as it may, in this case, it is as it relates to drugs. But in essence, these rules must be strictly compliant. And I think in looking at it, to merely say, well, we've changed the manner in which it's done. In addition, it was previously allowed that it had to be taken by the Illinois State Police, not taken by a nurse and handled in that manner. Another reason for that is the substantive qualifications of this evidence. It's so that, substantively, we know that somebody who's trained and qualified in the procedures that are required to accurately take this blood, place it in the proper tubing, make sure either anticoagulants or whatever needs to be provided in the tubes, which in these cases, there's nothing. It's placed in the proper tubes. It's done in the proper manner. It's done in accordance with the guidelines. And they put that onus on the Illinois State Police to do that or the officer in charge of taking that kit and doing the draw. It makes them require them to do that because, substantively, that has an effect on what evidence there can be. Because when you allow third-party people, when you allow other people to do it, I think it changes things and can have an effect, not just from a procedural standpoint of whether or not it's admissible, but more importantly to the extent of the actual burden of proof as it relates to convicting an individual of it. Because, and certainly in reckless homicide, they made distinctions there. Sports made distinctions and said, you know, in a reckless homicide case, substantial compliance with the rules, if you do it in a reasonably acknowledged medical standard and it can be proven up, then we'll allow it to be admitted and those things. But when you're doing under the DEY statutes, we have these rules, and they are set forth not merely as procedural things but also as substantive things for the admission of it. And in the Kotecki case, they do talk about and they cite two other cases that have been heard previously concerning many findings that most of these changes in the rules are merely procedural and not substantive. But in this case, I think it's far more than that, and we would respectfully ask this court, based on all of the evidence presented, that the court overturn the conviction of the defendant and remand it back to the court. Thank you. Thank you, counsel. Thank you. May it please the court, counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. Thousands of people are killed on our country's highways every year by intoxicated drivers, but it's not too many of them that have a dubious distinction of having killed an innocent woman and destroying her family and then, many years later, coming back and doing it again. And that's the case we're presenting here today. Defendant's first argument is ineffective assistance of counsel for failure to seek a fitness evaluation. If this court will note, I began my argument in this issue, as I did in all of the issues, by noting that the defendant has given this court no citation to the records whatsoever in any of his arguments. There is a forfeiture argument in all of the briefs, but I think it is especially important in this first issue because this initial paragraph that says, defendant was heavily medicated for depression and anxiety on a cocktail of antidepressants, including Lexapro, Ativan, and Romasicon. Defendant further claims that the drugs often make an individual lethargic and slow his comprehension. He says that he was often disoriented, and on one particular day, about three months before trial, he was so disoriented and combative that he had to be restrained and administer Taldoff, a powerful antipsychotic drug. He claims that the notes from the hospital reflect that he was having difficulty with memory and recollection and might want a psychiatric evaluation, and there's not one single bit of that that's in the record anywhere. That's made up of whole cloth. It's not cited to him in the brief. It couldn't be cited to him in the brief. There is none of that before this court, and that entire section should be stricken. The only thing about defendant's medications is in the PSI. It says that defendant takes one pill a day for depression and takes a mild sleeping pill to put him to sleep at night. So that's my first thing. This argument is just totally made up of whole cloth and should just be rejected because it's not even remotely supported by the evidence. In fact, rarely have I seen a case where there was stronger support for a defense counsel's strategy to not request a fitness hearing. This attorney was on top of defendant's mental health all the way through, as was the trial court, I would note. October 2008, which is about a year and a half after the crash, the defendant apparently had a mild stroke. And as a result of that, I mean right away, defense counsel filed a motion for a fitness exam. A week later, defendant's in court with his counsel. So he's obviously not too badly off. And then about a month after that, the defense counsel withdrew his motion for a fitness exam. On the record, it says that the stroke was the only basis for the motion. He goes on to point out that the defendant is going to be examined by a neurologist in the near future, and that after the results of that examination are obtained, this is, quote, unquote, we will contemplate either filing or not filing a future motion. Now, the defendant was in court with his counsel when all of this was going on, so he cannot say, as he does on his telebrief, that he knew nothing about it or that this was done without his consent. The trial court at that point in time very specifically notes that the defendant has not yet raised a bona fide doubt as to his fitness. A month later, before allowing the defendant to waive his right to trial by jury, the trial court mentions to defense counsel that he had raised the fitness to stand trial but had withdrawn the motion. Defense counsel states that he is not raising the motion, does not anticipate raising the motion, unless there are new medical developments. Again, the defendant was present in the court and didn't voice any objection to that. Again, the trial court observes that the defendant is fully aware of what is occurring at the time and appears to be fit to stand trial. So, as I say, rarely have I seen so much evidence that a defense counsel is constantly evaluating his own client to determine whether he is fit to stand trial and is clearly convinced, based on a lot of medical evidence, that he is fit to stand trial. Now, I would note that, in any case, there's no prejudice to the defendant because in order for a claim of ineffective assistance of counsel or for failure to request a fitness hearing, the defendant has to show facts that existed at the time of the trial that would raise the bona fide doubt of his ability to understand the nature and purpose of the proceedings. And he's entitled to relief only if he shows that the trial court would have found a bona fide doubt of his fitness and ordered a fitness hearing. Well, this trial court has already told us. I don't see a bona fide doubt, and so clearly, even if he had been asked, he would not have granted it. Finally, this whole amnesia thing, the Schwartz case that I cite in my brief notes that no court, either in Illinois or in any other jurisdiction, has found amnesia to per se constitute unfitness to stand trial. As I also noted in my brief, this isn't even a fact. I mean, no one testified that he had amnesia. So we don't know if it's true. It only comes in in closing argument. But in Schwartz, the court says that the only way that someone's unfit is if they can't assist in their own defense. And they go on to note that amnesia does not inhibit dialogue and discussion between an attorney and a client as to tactical decisions concerning trial, and the relevant inquiry is whether the defendant is incompetent to stand trial at the particular time of the trial and not whether or not he lacked memory of some prior specific event. The trial court also noted that even if the defendant claims, which he didn't, but even if the defendant claims he's unable to assist in the preparation of his defense, it's still not, amnesia is still not a requirement for a fitness hearing. Now, I think it is very clear that amnesia of the events of the accident is not a requirement for a fitness hearing. We also need to refocus on the fact that this is ineffective assistance of counsel, and the issue is not the amnesia itself, it's whether trial counsel was ineffective for not asking for a fitness hearing based on this claimed amnesia. As I said, this defense counsel was not ignoring his medical problems. He was up to date on everything that was going on around. He knew whether his counsel, the case law routinely says, no one knows their defendant like the defense attorney does. And it is clear that this counsel considered the option of a fitness hearing. This counsel probably was aware that amnesia at the time would not require, no judge would find the defendant unfit to stand trial, simply because he had amnesia about the events of the trial. So there's just nothing there. Moving on to the decision to go for a stipulated bench trial, counsel for the defendant lists a few examples of good reasons when you might stipulate to a stipulated bench trial. I would add another one is when a person is charged with driving with any amount of drugs in their system, and you're motioned to have those drugs, the test that reveals that those drugs were there, that's one of them. And two of the charges against the defendant, all that was required in the aggravated driving under the influence charges was the presence of drugs in the person's system. There is no requirement to prove whether they were affecting the person. The other thing is I thought this was kind of an interesting stipulated bench trial because it really was a bench trial. It wasn't just, yeah, we agree to everything. There were several parties stipulated that the defendant would present the testimony of two witnesses. Excuse me, wrong page. They went person by person of all the people, and there were a lot, that saw a defendant driving his vehicle at a high speed, erratically, all over the road, attempting to pass numerous vehicles before running into the victim's car head on. They had the traffic crash reconstructionist. Throughout this, I note that defense counsel continued to object to the admission of the evidence of the urine tests and the blood tests. He even had his own stipulated witnesses for the defense. That's what I'd never seen before. He had his own stipulated witnesses for the defense, which were two people that had claimed to have seen the defendant just moments before the crash and said he was just fine. The big thing in this case was that there were drugs in his system, and I don't usually stand in front of this court and say, look at this case, look at this case, because there's usually not one case that just really says it. But if Henderson doesn't say it in this issue, I don't know what does. He preserved the most important and virtually the only issue, which was the suppression of the drugs that were found in the defendant's system. Henderson says that a stipulated bench trial is not tantamount to a guilty plea if the defense counsel presents and preserves the defense, and that's exactly what this attorney did.  Because the defense counsel did actually present evidence on the defendant's behalf, and he did comment throughout. He comments on the stipulated evidence. He doesn't just sit there. He comments on it in a way quite akin to cross-examination. So once again, to say that this was an unreasonable strategy or that it prejudiced the defendant just doesn't lie. What really was important in this case was the urine tests. And as I was preparing for this case, I thought, I don't usually go in there and say, go look at this case and go look at that case, but I'm kind of doing that in this brief. There are five reasons why this court should reject the defendant's argument on the urine tests. The first is, once again, he's got no citations to the record. The second is the People v. Morris, which deals with this exact same issue, which directly quoting the United States Supreme Court reasonably concludes that this change in the administrative regulations was procedural and not substantive. The third reason is that the statute in question, it was invalid. The fourth reason is that contrary to the defendant's statement before this court, substantial compliance is enough. And the fifth reason is that the urine could have been collected under another statute, which does not have the requirements that the defendant objects to in this case. Moving to Morris first, in People v. Morris, the defendant challenged the exact same regulation regarding the alcohol swabs and said it was an ex post facto law. The Morris court noted that an ex post facto law is one that is both retroactive and disadvantageous. Disadvantageous is if it criminalizes an act that was innocent when it was done, increases the punishment for an offense that was previously committed, or alters the rules of evidence to make conviction easier by making substantive changes in the evidence needed to convict for the particular crime in question. Quoting from the, it's important to note that any time a statute or rule is changed, the amendment, an amendment that affects only procedural matters and not substantive rights will be applied retro, well I can't read, an amendment that affects only procedural matters will be applied retrospectively. This change in the administrative code, as the Morris court rightly concludes, was only procedural and therefore was properly applied. Quoting the United States Supreme Court, the Morris court said, we cannot receive any ground upon which to hold a statute to be ex post facto, which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time of the offense. That's Morris directly quoting the United States Supreme Court in Thompson v. Missouri. The Morris court went on to note that the amended rule did not criminalize an act that was innocent when done nor did it increase the punishment. It disagreed with the defendant's argument that the amendment made conviction easier by lessening the state's burden of proof. It noted that the amendment did not lessen the state's burden of proof since the state still had to prove that the defendant drove or was in actual physical control of the vehicle while under the influence of alcohol or while the alcohol concentration in his blood or breath was .08 or more. Elements of the charge and the burden of proof were the same. All that had changed was that a piece of evidence that may have been inadmissible under the pre-amendment regulation was now admissible. The Morris court's conclusion was that amending the rule did nothing more than admit evidence of a particular kind in a criminal case on an issue of fact that was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. The Morris court specifically found the amendment to be, quote, by definition procedural, not substantive. And that is they were dealing with the change in the blood swab administrative code. Morris is directly on point as far as the alcohol swab. The logic of the decision is equally applicable to the amendment of the portion of the code dealing with urine specimens because at the time of the fatal crash the administrative code said urine samples may be collected by the arresting officer, another law enforcement officer, or an agency employee. And at the time of the trial the code had been amended to include hospital nurses in the list. And amending the rule, and again I'm quoting Morris who was quoting Thompson, does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. Again, quoting Morris, the amendment is by definition procedural and not substantive. The next thing is, as the court in People v. Baird found, the alcohol swab section is not even valid of the administrative code. The Department of Police, which is the issuing agent for the section, stated that the disinfection requirement was only for the subject's well-being and not for evidence collection purposes. But the intended purpose of the regulation was to ensure the validity of results. Disinfection of the skin with alcohol was only for the subject's well-being and not for evidence collection purposes. The Baird court went on to note that when the Department of Police required disinfectant not for the test validity but solely for the subject's well-being, the department exceeded the authority delegated to it by the statute. It thus held that the administration of test results that do not comply with the code is not error because the regulation is not valid. By the same logic, once again, the part of the code that requires you to swab with alcohol, that whole section, is not valid. The same thing applies with urine collection. A urine sample cannot be more reliable if it is taken by a police officer instead of a nurse who has medical training, especially as the facts in this case indicate that the police officer was present to observe and authenticate the sample. The purpose of requiring the police officer instead of medical personnel to obtain urine cannot be to ensure the validity of the test since the regulation also exceeds the authority delegated in the statute. It also fails to comply with the code. Finally, getting to the issue of substantial compliance, contrary to argument for this court, People v. Bishop has said that substantial compliance is sufficient. Counsel, I know your time is up. Do you want to conclude this in a minute? Yes, I can do it. I would just like to note that as Justice Welch charged, the defendant wasn't charged with driving under the influence of alcohol, and so the blood tests don't matter. But in this case, there certainly was substantial compliance Under the test set forth in Bishop, the tests are reliable because they substantially complied with the code regulations and it did not affect the ability of the results. And then in closing notes, there is an entirely different statute, which I've argued in my brief, under which urine could have been collected, which does not have any of these requirements. Thank you, Counsel. Can you rebuttal, Counsel? The only thing I would finally state to the Court is concerning the issue of the admission of the testing that was done here. I just can't help but know the Illinois State Police's positions that they make before the Court. They are given the right to promulgate rules to make sure that this testing is done properly and is verifiable and is substantive in nature to be presented to a Court. Then when they figure out that they violated their own rules that they themselves set out, they turn around and change them and come back to the Court and say, that doesn't mean anything, that doesn't have anything to do with the substantive nature of the testing itself. That's really not what we meant when we said that. And yet that's precisely what the statute gave them the authority to do. You set out rules to, the way these blood draws were supposed to be done, so that they are verifiable and admissible in the Court. They do it, then when they violate their very own rules, they turn around and say, well wait, that doesn't mean anything, that doesn't have anything to do with the substantive nature of it. They talk about it one way at one time, one another. And that's always the way they've done this, and that's the progeny of all these cases. That's what it relies on. Always relying on the fact that at the end of the day, well someone has committed a horrible crime, so let's overlook the fact that we've not observed our own rules or violated various laws that have been set forth that we're supposed to follow, because the end result justifies the means that we take to get there. So I'd ask support to DEA. Thank you. Thank you. Thank you all for your briefs and your arguments today. We'll take them at our advisement and get back with you in due course.